## CLARK *vs.* THE CITY OF UTICA.

18b 451
37ap274

The sections of the charter of the city of Utica which provide that when the lands of individuals are taken for the purposes of streets, the common council may appoint *five disinterested freeholders* to ascertain and report a description of the real estate required to be appropriated, with the names of the owners, and the *recompense* which should be made to them, respectively, therefor, are in conflict with the provision of the constitution, declaring that where private property shall be taken, for public use, the compensation shall be ascertained by a *jury*, or by *commissioners* appointed by *a court of record.*

When a word has, by common usage, acquired a popular signification, it is to be understood in that sense when used in a statute or constitution; unless its meaning is controlled by the context in which it is found, or the circumstances under which it is used.

Accordingly *held*, that the word *jury*, as used in the above mentioned section of the constitution, was to be taken in its usual meaning, and that it conveyed, necessarily, the idea of a body having the usual characteristics, and acting substantially through the accustomed forms by which the powers of a jury are exercised.

THE facts in this case are fully stated in the opinion of the court.

*P. Gridley,* for the plaintiff.

*F. Kernan,* for the defendants.

BACON, J. The complaint in this case seeks to obtain relief from a proceeding on the part of the corporate authorities of the city of Utica, by which a portion of the plaintiff's lands in said city were appropriated and taken for certain streets opened therein, and his damages assessed and compensation ascertained, pursuant to certain provisions of the city charter. The only question which has been argued before me respects the conformity of the provisions of the charter, and the acts of the common council under them, with the constitution of the state. In the complaint the plaintiff avers that the proceedings of the corporation and the common council, in relation to taking his land and ascertaining his compensation, upon the opening of the streets in question, "is a proceeding to take the private property of the plaintiff for a public use, and that the compensation to be made

therefor, as provided by these proceedings of the common council, is not made, or to be made, by the state, nor has said compensation been ascertained by a jury, nor by not less than three commissioners appointed by a court of record, nor in any manner authorized by law or assented to by the plaintiff." And in another paragraph of the complaint, the plaintiff " further shows and submits, that sections 60 to 64 inclusive, of the act to amend and consolidate the several acts relating to the city of Utica, passed March 31st, 1849, are unconstitutional and void." By the stipulation between the attorneys for the respective parties, the case has been referred to me to determine and decide whether or not sections 60 to 64 inclusive, of the consolidated charter of the city of Utica, are unconstitutional and void, as in the complaint is alleged and claimed. It is conceded that the course taken by the common council, in laying out the streets and in ascertaining the compensation of the plaintiff for his land appropriated to the streets in question, was in accordance with the provisions of the charter, and the power and authority conferred by the charter was strictly pursued.

By the charter of the city of Utica, power is given to the common council to lay out, widen or contract streets within the city, and when land of any individual not freely appropriated is to be taken, notice is to be given to the owner; and thereupon, by section 60, upon proof of the service of such notice, " the common council may appoint *five disinterested freeholders* of said city, to ascertain and report a description of the real estate required to be appropriated, with the names of the owners, and the *recompense* which should be made to them respectively therefor, and whether any, and if any, what real estate would be benefited by the improvement requiring the appropriation of such real estate, specifying the same, &c., and the proportion of benefit which each parcel would receive." The remaining sections, to 64 inclusive, make provision for the confirmation of the report, the appropriation of the land, the preparing of assessment lists, and the collection thereof. They merely prescribe the *modus operandi* by which the lands are practically appropriated and paid for, and need not be particularly considered.

Clark *v.* The City of Utica.

The constitutional provision on this subject is as follows: "When private property shall be taken for any public use, the compensation to be made therefor, when such compensation is not made by the state, shall be ascertained by a jury, or by not less than three commissioners appointed by a court of record, as shall be prescribed by law."(*a*) There is no law applicable to the case before me, prescribing or carrying out this provision of the constitution, unless the section of the charter above cited and referred to is to be regarded as a compliance with its provisions. The constitution prescribes one of two modes by which compensation for property taken for public uses shall be made. The appointment of commissioners by a court of record has not been provided for in this case. Has then the plaintiff's compensation been ascertained by a jury? Unless a most liberal construction shall be given to the charter, and the five freeholders appointed by the council are the "jury" spoken of in the constitution, then the plaintiff's compensation has never been legally ascertained. What rule of interpretation then shall be applied to the words of the constitution? Obviously, it seems to me, the one suggested by Justice Story in *Martin* v. *Hunter's Lessee,* (1 *Wheat.* 326,) that "words are to be taken in their natural and obvious sense, and not in a sense unreasonably restricted or enlarged." Or, as more elaborately and emphatically stated by Ch. J. Marshall, in *Gibbons* v. *Ogden,* (9 *Wheat.* 188,) "as men whose intentions require no concealment, generally employ the words which most directly and aptly express the ideas they intend to convey, the patriots who formed our constitution must be understood to have employed words in their natural sense, and to have intended what they said." So, also, if technical words are used in a statute, they are to be taken in a technical sense, unless it appears that they were intended to be applied differently from their ordinary or legal acceptation. (1 *Kent's Com.* 462.) And it may, I think, be stated, as a corollary from these principles, that where a word, by common usage, has acquired a popular signification, it shall be understood in that sense, unless its mean-

(*a*) Const. art. 1, sec. 7.

ing is controlled by the context in which it is found, or the circumstances under which it is used. When, therefore, the constitution speaks of a *jury,* what would be obviously and naturally understood by the language? Precisely what the word imported, and for many years anterior it had been both legally and popularly understood to mean. It was no new word, then first coined and appropriated. When the framers of the original constitution of 1777 ordained that "trial by jury, in all cases in which it hath heretofore been used in the colony of New-York, shall be established and remain inviolate forever," they spoke, as the very words import, of a thing well known and in common use, and they are to be understood as ordaining that it was to continue to be used with its ordinary and well known attributes and functions.

Furthermore, when the present constitution was framed, the statutes contained provisions applicable to the subject matter in question here, in which the presence and action of a jury was required. Thus, under the act in relation to the alteration and laying out of highways, (1 *R. S.* 513,) provision is made for the issuing of a warrant and the summoning by a constable of twelve freeholders, six of whom, who are free from all legal exceptions, are to be drawn and to serve *as a jury.* And so in regard to private roads, the damages to the owner through whose land the road was to pass were to be ascertained in the same manner, by the intervention of a jury, summoned and drawn in like manner. (1 *R. S.* 517.) Ample provisions were made in the laws for constituting and summoning of both grand and petit jurors. And when it was enacted that all modes of trial, in cases proceeding according to the course of the common law, were to be by *jury,* or by referees, the thing indicated was clearly understood, and the necessary functions and accessories of juries were as clearly implied. It may then, I think, be assumed that when the constitution uses the language of the section above cited, it is to be understood that the word jury is to be taken in its usual meaning, and conveys necessarily the idea of a body having the usual characteristics, and acting substantially through the accustomed forms by which the powers of a jury are exercised.

Clark *v.* The City of Utica.

The counsel for defendants, in his ingenious argument, contends that as the constitution has not specified the number, nor the qualifications, of jurors in the case in question, any number is competent to perform the duty enjoined by the charter, and if they are freeholders they possess the primary qualifications attached to jurors, and will be deemed a jury, although not so denominated in terms. It may be that a law enacted under this provision of the constitution which should provide for the selection of jurors less than twelve, or even less than six, (the smallest number that has, so far as I know, ever been impanneled to perform any legal function pertaining to a jury,) and to be summoned in such mode as to secure the drawing, by lot, from a larger body, of a given number, with the advantage thus secured to each side represented, of a fair chance in their selection, would be entirely unobjectionable. But such is not the provision in the charter of the city of Utica. The persons selected are indeed styled freeholders, but the whole five are designated in the first instance, and they are arbitrarily named by the common council, without any hearing of the parties interested, and with no opportunity to be present or to participate in their selection, or to be certified of their competency. This clearly is not such a jury as the constitution contemplates—a body whose selection, construction and mode of operation was defined by laws of long existence, and was well understood by the popular mind.

A case similar in principle to this arose and was decided in the seventh district, by the justices of that district, at a general term. It is the case of *House* v. *City of Rochester*, (15 *Barb. S. C. Rep.* 517.) The charter of that city provided that " the damages and recompense to be paid to owners of lands, taken by the city for public improvements, shall be assessed by three assessors assigned by the common council." The city undertook to collect the assessments which had been made under the authority of this section, and the complaint prayed that they might be perpetually enjoined therefrom, and the question was directly presented on a demurrer to the answer, and the court held, expressly, that the section of the charter was plainly in conflict with the constitution, and the assessment based upon it was unauthorized

---
Tracy *v.* Talmage.
---

and void. The only distinction between the two cases is, that in one the assessors are an existing and organized body, and in the other they are created *pro re nata ;* but neither of them possess the characteristics, or are endowed with the functions of jurors, within the scope and intendment of the constitution.

I am admonished that before a court should declare an act of the legislature unconstitutional, a case must be presented in which there can be no reasonable doubt. (1 *Cowen,* 550.) I acknowledge the propriety of the rule, and should bow to its authority, in a doubtful case. But the proposition I have been endeavoring to sustain seems to me too clear to "give us pause," even in a matter which may be attended with some inconvenient results. If the charter conflicts with the organic law, the former must give way, and future legislation must remedy the defect. There must be a judgment for the plaintiff, pursuant to the stipulation.

[At CHAMBERS, September 20, 1854. *Bacon,* Justice.]