## BELL, receiver &c. *vs.* YATES.

A promissory note, given to an insurance company for the premium upon a policy to be issued by such company on its organization, and made for the purpose of complying with the 5th section of the act of 1849 relative to the incorporation of insurance companies, and to constitute a part of the capital stock of the company, which contains a promise to pay the sum specified, "in such portions, and at such time or times, as the directors may, agreeably to their act of incorporation, require," is payable absolutely, at a day not later than at the end of twelve months from the date thereof, and, in an action thereon, is to be regarded according to its legal *import*, and not according to its *form*.

The statute of limitations applies to such a note according to its legal import, and as if the note were made in the form contemplated by the statute, viz. payable at the end of, or within, twelve months from its date; and will commence running, against an action upon it, at the end of a year from the date.

Requisites and sufficiency of an answer setting up the statute of limitations as a defense.

THIS is an appeal from a judgment entered upon an order overruling a demurrer to an answer. The facts sufficiently appear in the opinion of the court.

*D. P. Corey*, for the plaintiff.

*R. H. Cushney*, for the defendant.

*By the Court*, POTTER, J. The plaintiff brings this action as receiver of an insolvent mutual insurance company, of the name of the "Mohawk Valley Insurance Company." The complaint alleges that the company was organized under the act of April 10, 1849, (*Laws of* 1849, *ch.* 308,) and duly alleges the plaintiff's title to the note, and his right to bring the action as receiver. So, also, are duly stated the facts that the note was delivered to the persons who proposed to organize the company; that it became and formed a part of the capital stock at the time of its organization; the issuing of a policy to the defendant referred to in the note, and his thereby becoming a member of the company. Then follows the allegation that the whole amount of the note, with in-

terest from date, 1st November, 1852, is due. The note is in the following form : " $300. For value received in policy No. 1, dated June 17th, 1851, issued by the Mohawk Valley Insurance Company, I promise to pay the said company, or their treasurer for the time being, the sum of three hundred dollars, in such portions, and at such time or times, as the directors of the said company may, agreeably to their charter and by-laws, require." The questions which we are to examine arise from the third answer of the defendant, to which the plaintiff demurred. The answer is very brief, and is in form as follows : "And the said defendant, for a further defense, says that the said plaintiff ought not to have or maintain his aforesaid action against the defendant, because he says that the said cause of action mentioned in the said complaint did not accrue to the said plaintiff at any time within six years next before the commencement of this action."

The legal issues are thus narrowed down to two simple questions. 1st. Is the answer of the defendant good in form ; and 2d. If good in form, can the statute of limitations be pleaded to such a note.

*First.* By the provisions of the code, (§ 168,) every material allegation contained in this complaint is to be taken as true, because the answer makes no denial. We have, therefore, no labor to perform in looking after defects in the complaint ; none are alleged. I think the complaint is good ; all its material allegations are admitted. The qualities of an answer are also specified, by § 149 of the code. Answers that set up no denials, must, by subdivision 2 of this section, contain "a statement of new matter, constituting a defense or counter-claim ; in *ordinary* and *concise* language, without repetition." Does this answer, then, contain "a statement of new matter ?" If by *new* matter, is meant something that has not before appeared—something that is not in the complaint—then the *statement* "that the action did not accrue within six years next before the commencement of the action," is new ; for although facts are stated in the com-

Bell *v.* Yates.

plaint from which such a conclusion, or inference may be, perhaps necessarily must be, inferred, or worked out, yet, according to strict rules of pleading, there is no express *statement* of that kind in the complaint; therefore, as a *statement,* it is new. In *Stoddard* v. *Onondaga Conference,* (12 *Barb.* 573,) the court lay down this syllabus: "The *new* matter constituting a defense, in an answer under the code, means some *fact* which the plaintiff is not bound to prove in the first instance to establish his cause of action; and which goes in avoidance or discharge of the cause of action alleged in the complaint." From this view, and the authority cited, it clearly appears to me that this answer does contain *a statement of new matter,* which, if true, and well pleaded, would go in avoidance of the cause of action, in any case where such statement would be a defense. Is the answer then well pleaded? By the old system of pleading prior to that provided by the code, the answer in this case is the exact form of a plea of the statute of limitations, omitting the concluding part, "and of this he puts himself upon the country" &c., which meant that the truth of the fact so stated he desired to have tried by a jury. (2 *Chitty's Pl.* 450.) Such a plea was by that system regarded as setting up a *fact* to be tried. The answer of the statute of limitations required by the language of the code does not seem to demand a different form; it only requires "a *statement* of new matter constituting a defense, in *ordinary* and *concise* language." It certainly could not well be more concise; and if the common English lexicons are a safe guide to the meaning of words, "ordinary" means that which has been established, and is customary. This was the *established* and *customary* form, when the code was enacted, and we may assume that the legislature had reference to the established and customary use of legal terms. It is, therefore, in legal language, both "ordinary" and "concise." But beyond all this, § 159 of the code declares "that in the construction of a pleading, for the purpose of determining its effects, its allegations shall

be liberally construed, with a view to substantial justice between the parties." If a technical, or an ordinary, rule of construction would not cover this answer, it appears to me a liberal rule would. I do not hold that nothing less than a liberal one would be sufficient; indeed I think it requires no demand upon liberality. It is insisted by the plaintiff that this answer states no *facts*—that it merely states a conclusion. If this was true, it is not a violation of the demand of the letter, or of the spirit, of § 149. That section only requires new *matter*, not new *facts*, to be set up. But if it was as the plaintiff contends, a conclusion, and not a fact, why the necessity of setting up facts? The defendant is supposed to be satisfied with the facts stated; he relies upon the facts set up by the plaintiff; he adopts them as his facts; why go through the idle form of repeating them in an answer, and thus incumber the record with the facts which both parties have agreed to, and which have once been fairly set up? The code says, *without repetition*. Why then require him to repeat? But I think the plaintiff is mistaken in supposing the defendant has not set up *facts* in his answer. That the action was not commenced within the proper period, is a fact. In the old system, it was a fact, upon which the party put himself before a jury. The time when an act was performed, is a fact. Suppose instead of saying that the said cause of action did not accrue within six years before commencing the action, he had said the same thing in effect, in this language: "The said note became due 18th June, 1852." Would that be an allegation of fact, or one of law? Most certainly in this case, the latter. So both parties contended, on the argument, and that is the very question in issue. Then suppose he had added, "and this action was not commenced till the 25th February, 1860." This, undoubtedly, would have been the allegation of a fact, but an entirely immaterial one, standing alone. Such a fact is no allegation that the statute of limitations is to be relied on; it shows nothing in avoidance of the action; the day is immaterial, except as connect-

ed with the fact *that it was not within six years;* and if it was not within six years, then the day after that, is also immaterial. Something more must be stated; and yet this last statement—conceded to be one of fact—is only equivalent to what is actually stated in the answer, if we assume that the action was commenced 25th February, 1860. By § 91 of the code, six years is the limitation of time for bringing actions on contracts. By § 74, civil actions can only be commenced within the periods in that title prescribed. By the same section "the objection that the action was not commenced within the time limited can only be taken by answer." How otherwise, then, can it be taken in the answer, but in the "concise" and "ordinary" language that has been employed in this answer? Did the plaintiff, who did know, desire to be informed by the defendant who perhaps did not know, when he, the plaintiff, commenced the action? Is this technicality in pleading insisted on? The plaintiff, in the complaint, does not any where allege, and he was not bound to allege or otherwise inform the defendant, when the action was commenced. The defendant, however, supposing this fact to aid him in his defense, by way of new matter in avoidance of the cause of action, alleges as a fact, without naming the particular day, that the *time* was not within six years next before the commencement of the action. To test the question whether this is an allegation of fact, suppose the allegation was untrue, and consequently no avoidance of the action; would not evidence be required to settle that issue? And would not the truth of this issue of fact, when found, determine the whole action? Most certainly. I think, therefore, the answer as a pleading is good. (*People* v. *Arnold,* 4 *Comst.* 508. *Ford* v. *Babcock,* 2 *Sand.* 519, 525. *MS. opinion in Bell* v. *McKercher, Bockes, J.*) It being an allegation of *fact,* the demurrer, as a matter of law, admits its truth, and as a consequence admits in effect that the action was not commenced within six years after the note was due. But to determine the case upon this point would only settle

a question of pleading, and the plaintiff desires that it be not decided on this ground alone. We then come to the next question, which is one upon the merits.

*Second.* Can the statute of limitations be pleaded to such a note? This note, it must be assumed, is one of the class which were intended to be used to effect an organization, and supply the place of capital. This class of notes, when identified as belonging to that class, are a kind of statute instrument, and have been held to possess somewhat different attributes of character from ordinary promissory notes. (*White v. Haight,* 16 *N. Y. Rep.* 310.) The case just cited holds, in effect, that though such a note, upon its face purports to be *payable* in such portions, and at such time or times, as the directors of said company may agreeably to the charter and by-laws require, yet the statute under which it is given fixes and controls the intent, and the decision is, that they are notes payable absolutely; that they are to have the effect declared by the statute, notwithstanding their form. Inasmuch then, as it is safe to say, from the opinion to which we have referred, that notes in the form of the one before us, are *not* in the form *intended* by the statute; that they are not absolute in form, but should be; it would be well that we examine to see what form they would appear in, if made conformably to the intent and direction of this statute. When the proper form shall be seen, we can then better determine their true character and qualities, and more correctly judge whether the statute of limitations applies to them. A slight examination of § 5, of this statute of 1849, ch. 308, will show that this, as well as most of the vexed questions of litigation, in this regard, almost overwhelming to the courts, is owing to a defect in the first step of the organization of these mutual insurance companies; a step which has been almost universally fatal to their prosperity and existence, has spread profitless litigation broadcast throughout the state, and instead of obeying the professed object of their organization, that of insuring to protect, have

Bell *v.* Yates.

only insured to involve in embarrassment, and often to ruin, a larger class of citizens than any other of the many delusive projects with which modern experiments in wild speculations, have afflicted the country, and has led the corporations themselves, if not the courts, into labyrinths of confusion, inconsistency and conflict. I have said in another case, (*Devendorf* v. *Adams, MS. opinion,*) " that a strict and proper compliance with the letter and spirit of this statute required, before a perfect organization of these companies was declared, that *agreements*, made prior to and distinct from the notes, should have been first entered into for insurance risks ; by subscribing to such agreements in a book of subscription to be opened and kept for that purpose, (§ 4;") and the notes to be given by § 5, and which were to represent capital stock, were to be given in addition to, and in advance for premiums on policies to be issued upon said agreements ; and the notes so to be given were to be made payable at the end of, or within, twelve months from the date thereof. The date of the note, and the exact day of its payment, was required to be a fixed and certain day; and to carry out the spirit of the statute, the note upon its face should have referred to the agreement upon which it was founded. This agreement so subscribed, should have been preserved with the book in which it was written. The notes so made, so filed, so identified, so preserved in compliance with the demand of the statute, would have carried with, and upon them, the evidence of their own character. This is, clearly, I think, what the statute contemplated should be done ; and nothing less than this should have been regarded by the attorney general as a proper security to the public ; nothing less than this was a true compliance with the statute, and nothing less than this would have furnished the proper form of the note. I am not aware that in the multiplicity of cases that have been before the courts, any single corporation, organized under the statute of 1849, has thus complied with these plain simple demands of the statute ; or that any one of them has ever adopted

the proper form of a stock note. I have not therefore re-
garded it as time misspent, or as traveling beyond the legiti-
mate range of inquiry in this case, to show what these notes
should be, or in what form they should be made, in order to
comply with the demands of the statute; inasmuch as the
highest court in the state has held that such notes are to be
regarded, in these actions, according to their legal *import*,
and not according to their *form*. Holding that to be the
law, the statute of limitations is, as a matter of course, to
be held to apply to them also, according to their legal im-
port, and as if made in the contemplated statute form. We
see then, as well from the provisions of different sections of
this statute, as from the numerous cases in the courts, that
these corporations in their organization and subsequent busi-
ness relations, became possessed of two distinct characters of
notes, subject to different liabilities by their makers, controll-
ed by different rules of law in their construction when the
class to which they belong is identified, and imposing upon
the holders, (the corporation or receiver,) different precedent
acts and duties towards the makers, such as notice, assess-
ment, &c. in order to create or determine the liability. In
this case we have to do only with a note given prior to or-
ganization, made under the provisions of § 5—a note given
as a substitute for capital. The makers of notes of this
character might be supposed to enter into their undertakings
upon the theory of finding their advantage either in the
success of the enterprise or of obtaining insurance from time
to time upon the agreements on which these notes are based,
at rates sufficiently advantageous to them to warrant their
entering into the agreements and of organizing a corporation.
If the corporations so attempting to establish a capital fail in
making the proper provisions in their charter or by-laws, to
protect themselves from the anticipated benefits, it is not a
matter now to be urged to the courts, to affect the construction
to be given to their obligations. The makers of all notes of this
class, are now to be regarded by the courts as if they had

executed their notes upon a good and valid consideration. Let us then for a moment look at the note in question, as if it was made in the proper form, according to the *intent,* and in the strictest compliance with the spirit of this statute; for the maker, I think, is now estopped from alleging that he has failed to perform his legal duty, in making it in the proper form. We will therefore suppose that the defendant with the other corporators met in pursuance of their notice, and in accordance with the provisions of § 4 of the statute of 1849, subscribed the book of propositions, and entered into the agreements therein specified. The statute, it is true, does not specify the precise *form* of these agreements to insure, upon which notes are to be given, but it does require that they shall be *agreements for insurance,* and, as a necessary consequence, at such a rate (which is to be fixed by themselves) " that the premiums on such agreements shall amount to $100,000, and the notes received therefor, *payable as aforesaid."* How payable? The statute says, *" at the end of, or within twelve months from the date."* Here then we see the note made, we say in due form, and according to its legal import and effect, duly presented in the pleadings; and proceed to examine the question.

As was said at special term in *Bell* v. *McKercher,* (per Bockes, J.) the legal import of this note, in the hands of the receiver, is, that it is an absolute promise to pay the company or bearer $300, at a day not later than at the end of twelve months from the date thereof, which the plaintiff alleges was the 17th June, 1851. We have now, for the purpose of this argument, supposed this note to posesss that form which the charter demands: we have been shown no act of the legislature declaring it *not* to be within the statute of limitations. We are then, I suppose, to regard it as we would any other note falling due twelve months after date. We will not stop to discuss the meaning of the term payable. We must presume the legislature used it in its ordinary legal and commercial sense. By the law merchant, *" payable"* is

nearly synonymous with " *due.*" The only distinction I have ever found is, that a note is *due* on the day mentioned for its payment—but three days of grace makes it *payable* three days after due. Then it is a contract. The statute made it so. The statute calls it a note: if so, it comes within the provisions of § 91 of the code, prescribing six years as the period within which an action upon such a contract must be commenced. (*See also* § 74, *Code.*) But it is argued that notwithstanding this note might otherwise be subject to the statute of limitations, that statute is a matter in which no one can claim vested rights; that it is entirely under the control of the legislature, and that the legislature, by two distinct acts, have abrogated the *effect* of the statute of limitations upon this class of notes. The two statutes referred to, are the act of 1853, (*chap.* 466, § 13,) and the act of 1854, (*chap.* 369, § 3.) The provisions of these two statutes last cited, are substantially identical. It will be sufficient to set forth the terms of the former, which reads as follows: " § 13. All notes deposited with any mutual insurance company at the time of its organization, *as provided in section* 6, shall remain as security for all losses and claims, until the accumulation of the profits invested, as required by the 8*th section of this act,* shall equal the amount of cash capital required to be possessed by stock companies, organized under this act; the liability of each note decreasing proportionately as the profits are accumulated," &c. Now it may be true, though the company in question was organized in 1851, and had executed contracts, which without legislative interference, would have been subject to the statute of limitations, that the legislature of 1853 could change the effect of the statute in that respect; yet there is nothing in the act of 1853 that can be construed as working such an effect. First, the title of the act of 1853 does not purport to amend the act of 1849. It provides a new and independent system, in many respects, for the organization of such companies. Second, its language, though general, as applying to all mutual insurance compa-

Bell *v.* Yates.

nies, must be construed like all other statutes, as prospective in effect; unless otherwise declared in the act itself. But its own language limits it *to such notes as are provided in* § 6 *of that act;* (1833.) Third. The rule of construing statutes is never to abrogate or repeal their provisions, except they are so repugnant that both statutes cannot stand together. This cannot be reasonably claimed for the statutes in question; and besides, the 20th section of the act of 1853, which brings the companies organized under the act of 1849 under the provisions of the act of 1853, preserves to the charters under the *former, all the privileges granted by their charters;* and the 28th section of the latter act, which repeals the act of 1849, provides that such repeal shall not affect any companies organized under the former act. The argument that the legislature intended these notes to constitute a permanent fund is not sustained by any express provision fixing the extent of *time* that they should so remain; and if they intended that the statute of limitations should apply to them, it would be better that they should say so than that the courts should legislate such a provision into the statute. Having thus examined the questions that seem to be presented on this appeal, I have come to the conclusion that the judgment of the special term should be affirmed.

Since the foregoing opinion was prepared, I have been favored with the opinion of the supreme court of the fifth district, in the case of *Howland, receiver,* v. *Edmunds,* recently decided by that court, ALLEN, J. dissenting;(*a*) by which it appears that a majority of that court have come to a contrary conclusion upon the same question. Respect for the opinion of that co-ordinate body has led me to read with care their views upon this question, and to review my own examination. I have not however been able to concur with that court, nor so to modify my own views as to change the conclusions to which I had arrived. I cannot concur with that court in what, to me, appears to be a forced and strained

(*a*) Ante, p. 433.

construction given by them to *words* in the 5th section of the statute of 1849. That statute requires that in organizing the company the notes to be received in advance for premiums are to be "*payable at the end of, or within twelve months from the date thereof.*" Before proceeding to show what the court in the fifth district have construed these words to mean, I propose to quote some authority which has always been controlling with me, in construing *words*, in the language of statutes. In *Waller* v. *Harris*, decided in the court of errors, (20 *Wend.* 555,) Bronson, J. at pages 561, 2, says : " The current of authority of the present day is in favor of reading statutes according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending their operation. Courts cannot correct what they may deem either excesses or omissions in legislation ; nor relieve against the occasionally harsh operation of statutory provisions, without the danger of doing vastly more injury than good." This is substantially the language of Justice Story, in *Martin* v. *Hunter's Lessees*, (1 *Wheaton*, 326,) who said, " Words are to be taken in their natural and obvious sense, and not in a sense unreasonably restricted or enlarged." To the same effect is the language of Ch. Justice Marshall, in *Gibbons* v. *Ogden*, (9 *Wheat.* 188.) " We are," says he, " to give that construction to words, which most aptly and directly expresses the ideas they intend to convey." And Chancellor Kent (1 *Com.* 462) says : " The words of a statute, if of common use, are to be taken in their natural, plain, obvious, and ordinary, signification and import, and if technical words are used, they are to be taken in a technical sense," &c. And see opinion at special term, per Bacon, J. *Clark* v. *City of Utica*, (18 *Barb.* 453,) in whose views I concur, and who says, " that when a word by common usage has acquired a popular signification, it shall be understood in that sense, unless its meaning is controlled by other circumstances." I apprehend that following these rules, if a " man

of ordinary understanding" had been directed by another to make a note for a given amount, payable at the end of, or within, twelve months from the date, if he obeyed his instructions, and adopted the *plain, obvious,* and *ordinary* meaning and import of the language of the direction, it would not have occurred to him to prepare a note like the one in question. Such note would not "*aptly and directly*" express the idea of the direction; it would not be the "*natural and ordinary*" sense of the words of the command. Such an instrument would only be produced as the result of a *study,* to secure some other object beyond, or in addition to, that directed. It would be the production of a forced or strained attempt to *extend* and *enlarge* the meaning of the *words,* so as to include something else, and make the instrument perform some office, or use, other than that which would be naturally drawn from the language. But suppose, instead of the ordinary common sense construction, we regard the words used in the statute, as "*technical,*" and according to the rule of Chancellor Kent, we construe them in a "*technical* sense." The form of the note, in this view, would be a still greater departure from the demand of the language. What in *technical* language would be the form of a note "payable at the end of or within twelve months from the date?" What is the meaning of "*note,*" when used in a statute? Does it not mean "*note*" according to the law merchant? Savage, Ch. J. said, in *Cook* v. *Satterlee,* (6 *Cowen,* 108,) "that the essential qualities of a note are, 1st. That it be payable at all events, not dependent on any *contingency;* nor payable out of any particular fund. 2d. That it be payable in money only." By 1 *R. S.* 768, § 1, the money therein mentioned "*shall be due and payable as therein expressed.*" How is it therein *expressed?* Is it expressed to be within twelve months? No such expression in the note. Is it expressed to be at the end of twelve months? Certainly not; no such expression in the note, (if it be one.) Section 4 of the same statute makes parties to "*notes*" liable

"in like manner as in cases of inland bills of exchange, *and not otherwise.*" If this is a "note," and not a contract, it is not such a note as this, that the statute contemplates. The court in the fifth district say, "in the first place the language of the statute is not, "*that the notes shall in terms and upon. their face,* be made payable at the end of, or within, twelve months from that date." Surely, the statute did not attempt to prescribe the exact form, but it did require that it should be a *note.* The court further add, "but the requirement is *perhaps* answered, if they are in such form that payment may be required within the period specified by the statute." But we answer; this *perhaps* depends upon a *contingency,* and a *contingency* does not belong to a note, which is required to be made payable *absolutely.* It is an attempt to shrink, or restrict the meaning of the term "*absolutely,*" into the meaning of the word "*contingent;*" for the court add, "hence it was in *effect* payable at the end of, or within a year from its date." But the statute was not attempting to direct what must be the *effect* of a note, but what the note itself should be. An *absolute* note, and a *contingent* note, are not the same, even in *effect.* Nobody will doubt that an *absolute* note would have been a compliance with the statute. I cannot admit that a *contingent* obligation is a compliance for every purpose. Neither by the law of mathematics, nor by the law which controls matter, is an inferior body or thing equal to a superior one. Nor will the doctrine be so held, I think, in municipal law, so long as it remains a uniform rule of action. The same court also say, "Whether the note is, or is not, *precisely* in the form required by the statute, is immaterial, since the maker chose to give, and the company to take, one in the form, and with the conditions, which this note contains." This is not quite the doctrine of the court of appeals, in *White* v. *Haight,* (16 *New York Rep.* 321.) Notwithstanding the parties, in that case, chose to give their note the same form as this; and inasmuch as like this, it was given for the purposes of organizing the company, the court

Bell *v.* Yates.

held, "it was to have the effect declared by the statute; it was payable absolutely." "They are," say they, "to be considered as capital." Now, can it be true, as an impartial and equal rule of law, that the defendant is estopped by the form of the note, and not the plaintiff? That the note is both *absolute*, and *contingent* in favor of the plaintiff only, and that, just to suit his convenience and his convenience only; that is, the same note *is absolute*, and payable at the end of the year, for the plaintiff's purpose of making the defendant liable without an assessment; and for the plaintiff's purpose of avoiding an answer of the statute of limitations, by the defendant, *it is not absolute* but contingent; that for the latter purpose, it is not payable till demanded, or suit brought, and not liable to an assessment at all? I am not prepared to lay down a rule that shall put the parties into court in a state of such inequality; with such want of reciprocity of rights and duties. It is either an absolute note as to *both* parties, or as to *neither*. If it is a contingent obligation, and not absolute, it is so as to both. If there is any compressibility, elasticity, or sliding scale in the written contract, it should be mutual.

The argument of that court, in favor of the view that the statute of limitations does not apply to such a note, is, in effect, that it was the *intent* of the legislature, and the *design* of the act, to form out of this class of notes, a permanent fund, and a substantial capital, until all liabilities of the company should be met and extinguished.

The statute of limitations, itself, is a general law, expressed in general terms; and applies to all cases that are not expressly, in terms, or by necessary implication, *excepted*, as follows: "Civil actions can only be commenced within the periods prescribed by this title, after the cause of action shall have accrued, except when in special cases a different limitation is prescribed by statute." (*Code*, § 74.) It is not claimed, here, that this statute has been repealed, or abrogated by any express provision of any subsequent or other statute. If it is

abrogated, it must be by necessary implication, and in order that necessary implication should work this effect, it must appear either that such was the clear *intent* of the legislature, to be gathered from the language of the last act, or that the subsequent statute is so clearly repugnant to the prior one that both cannot exist and be in force at the same time. (*Williams* v. *Pritchard,* 4 *Durn. & East,* 2. *Dercies' case, Cro. Eliz.* 512. *Rex* v. *Pugh,* 1 *Doug.* 188. *Dwarris,* 514. *Foster's case,* 11 *Co.* 63. *Williams* v. *Williams,* 4 *Seld.* 532.)

The rule taken from *Dwarris,* (*supra,*) and which received the approbation of the court of appeals in *Williams* v. *Williams,* is, that even " Where the intention of the legislature is not apparent to that purpose, the general words of another and later statute, shall not repeal the particular provisions of the former ones." So, though statutes may be repealed by implication, and without express words, the leaning of the courts, has ever, here, and in England, been against the doctrine, if it be possible to reconcile the two acts of the legislature together; or, unless in the latest act, some express notice is taken of the former, plainly indicating an intention to abrogate it. (*Bowen* v. *Lease,* 5 *Hill,* 225, 226, *and cases cited.*) In *Thornby* v. *Dutchess of Hamilton,* (10 *Mod. Rep.* 118,) it was laid down " that these repeals by implication are things disfavored by law, never allowed of, but where the inconsistency and repugnancy is *plain, glaring, and unavoidable.* For these repeals carry along with them a tacit reflection upon the legislators, that they should make one act repugnant to, and inconsistent with another." And in *Foster's case,* (*supra,*) Lord Coke, says: " That forasmuch as acts of parliament are established with such gravity, wisdom, and universal consent of the whole realm for the advancement of the commonwealth, they ought not by any constrained construction, out of the general and ambiguous words of a subsequent act, to be abrogated." It is not for the courts to assume that there is any less of gravity, wisdom, or forethought in modern, than in more ancient

legislation. Were it so, that fact would not enlarge the province of the courts; or change the law of interpretation. (*See also Williams* v. *Potter,* 2 *Barb.* 316.) I have been entirely unable to discover in any of the provisions of the general act to organize mutual insurance companies, passed in 1849, or in any subsequent acts on that subject, either any *express* repeal, or *implied abrogation* of the general statute of limitations; if tested by the well settled rules of law.

These ancient landmarks and monuments of wisdom, to which I have referred, seem to have been quite recently approved by our own highest courts. Against such uniform and clear authority, I can see little force in the argument, that unless we construe these notes to be continuing securities, dealers with these companies would have no security for losses and debts which should accrue during the entire corporate existence of the company. The want of foresight in those who entered upon this novel and untried system of security, or the hardships that may result from want of their having used the proper caution, or even the fact that the legislature omitted to provide a system perfect in its details, does not, in my view, call upon the courts to bend the law, in order to favor legislative defects, or cases of hardship; nor be diverted for this reason, from their especial sphere of duty, by attempting to mingle their legitimate judicial duties of construing statutes, to which they have been assigned, with that of the legislative power of making laws, which belongs to a different department of the governmental power—power which the courts cannot assume. Questions of expediency —of public policy—the justice, or injustice of statutes— were not intended to be committed to the domain of the courts. The remedy for unwise, defective, or unjust legislation is an appeal to the same sovereign power that occasioned it, to correct the evil. This general insurance statute may be defective; indeed the courts have frequently so held; it may not protect parties dealing with the corporations

which it has authorized; the legislature may have intended to provide securities, and may have failed to accomplish their designs; but all this furnishes no reason why the courts should depart from their proper sphere—fill up every *casus omissus*—supply what they conceive to be its defects, and interpolate into it whatever in their opinion ought to have been put there by its framers. If these views are correct, then the ground that the legislature in their general acts designed a system of security different in *effect* from that which they have promulgated cannot influence our decision. What they have enacted must be interpreted, like other statutes, by the rules we have found to be established.

Were it at all our duty, we could suggest a better reason than has been given in the opinion we have reviewed, why these notes should be not held to be continuing securities. The mortality of their makers, as well as their changing responsibility, doubtless suggested to the legislature the necessity of a change of corporators, and a corresponding change of securities as often, at least, as once in six years; but it is not our duty to look for reasons for the acts of the legislature. We cannot, with these views, concur in that opinion of our brethren of the 5th district.

Judgment affirmed.

[CLINTON GENERAL TERM, May 7, 1861. *Rosekrans, Potter* and *Bockes,* Justices.]