[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 192 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 193 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 196 
The appraisement of the plaintiff's damages was made under the 4th section of ch. 31 of the Laws of 1847, which amended the 10th section of ch. 216 of the Laws of 1846. That section provides for a petition praying for the appointment of a jury of appraisers, for the drawing from the grand jury box of the county the names of twelve competent and disinterested jurors, who, by an order to be entered in the court of common pleas or county court, are to be appointed appraisers of the damages to be sustained by the owners of the property which is the subject of the appraisement. They are to take the official oath prescribed by the constitution. If, at the time of their meeting to make the appraisement, "the whole of said appraisers" shall not appear, or any of them shall refuse to serve or be objected to and such objection be allowed, the judge is to nominate and appoint "other competent persons to serve on juries in the county," sufficient to make up the number of twelve, and the "said jury" may adjourn from time to time. The section further gives to them the power to examine witnesses on oath, which oath any of "said appraisers" is authorized to administer, and it is declared that they "shall, without fear, favor or partiality, assess the value of the land taken and the damages which the owners may sustain." They are to make a "certificate or inquisition of their appraisement, specifying the items appraised, which shall be signed by a majority of the appraisers and shall contain a minute and accurate description of the land appraised, with a map thereof," and are to present the same, with the testimony taken, to the county clerk, who is to file them in his office. *Page 197 
In the subsequent part of the section, the appraisement is spoken of as "the inquisition of the jury," and their finding of the value and damages is called "the verdict of the appraisers," while they, themselves, are spoken of only as appraisers.
The first question presented is, whether this section authorizes a majority to decide upon the amount of damages or whether unanimity is requisite for a decision, notwithstanding that the signature of a majority only is required to the certificate or inquisition of appraisement. In contemplation of law, the signed inquisition is the appraisement. It has no legal existence until it is so evidenced; and when so evidenced, the law looks to it alone to ascertain whether a determination has been made and what it is. The power to make this certificate being given to a majority, and the statute making no other requirement as to its validity in this respect, we are not at liberty to impose any other terms. This construction is, moreover, in harmony with the general provision of law which governs the action of public officers and other persons to whom any power, authority or duty is confided by law. The Revised Statutes expressly provide (2 R.S., 555, § 27) that a majority, upon a meeting of the whole, may act, unless special provision is otherwise made.
Taking this, then, to be the true construction of the act, the next question is, whether it conflicts with section 7 of article 1 of the constitution of this state. That section, so far as it bears upon this case, is as follows: "When private property shall be taken for any public use, the compensation to be made therefor, when such compensation is not made by the state, shall be ascertained by a jury, or by not less than three commissioners appointed by a court of record, as shall be prescribed by law." The appraisers, whose appointment is provided for in the act in question, are not commissioners appointed by a court of record, within the meaning of the constitution. The language implies that *Page 198 
commissioners are to be selected by the court, and assumes that in such selection the court will, or, at any rate, may exercise discretion and judgment in regard to the fitness of the persons to be appointed to perform the duties which will devolve upon them. Providing for a selection by lot and an appointment thereon, would amount to an evasion of the object of the constitutional provision.
The question then remains, whether these appraisers are a jury within the meaning of the constitution. If that term had not acquired a peculiar meaning when applied to this class of cases by prior legislative usage, and had not been continually in use in that special sense up to the time of the convention by which the constitution was formed, I should, without any doubt resting upon my mind, be of opinion that the peculiar tribunal provided by this act was not a jury. That term, when spoken of in connection with trial by jury in the 2d section of the same article, imports a jury of twelve men whose verdict is to be unanimous. Such must be its acceptation to every one acquainted with the history of the common law, and aware of the high estimation in which that institution, so constituted, has for so long a period been held. But from an examination of the statutes upon this subject of taking private property for public purposes, during a period of 20 years immediately preceding the sitting of the convention, it is apparent that the term, "a jury," had been in frequent use as descriptive of a body of jurymen, drawn in the ordinary mode of drawing juries, to whom was committed the appraisement of damages for private property taken for public uses, and whose decision was to be made by a majority. It seems to have been thus used because the term was descriptive of the civil condition of the persons composing it, and by way of distinguishing between such a body of jurymen and the commissioners appointed by courts under many other acts to perform the same functions. We have been furnished with references to many of these acts by the *Page 199 
counsel for the defendants. Among the number passed in 1846, prior to the convention, are chs. 216, 256, 308 and 313 of the Session Laws of that year. In the first named, which relates to the defendants, the petition is directed to be for the appointment of a jury of appraisers; eighteen are to be drawn from the grand jury box; twelve at least are to meet and act, and a majority of those acting are to sign the inquisition. They are designated in different parts of the act as jurors, and a jury, and as appraisers, and their inquisition as that of the jury. The two next chapters cited differ from the first only in requiring the drawing of twelve jurors, and that the whole number should act, a majority signing the inquisition. The provisions of ch. 313 are identical with those of ch. 216. Among the laws of 1845, chs. 328 and 350 provide for a jury of appraisers, six in number, a majority of whom are to make the certificate, and they are called indifferently, throughout the acts, jurors and appraisers, and jury of appraisers. Going back to 1838, chs. 224, 225 and 290 contain provisions in substance the same as the last cited acts. In 1836, chs. 260, 261, 262, 269, 349 and 477, all contain similar provisions, twelve being the number, and a majority being authorized to sign the inquisition. In 1834, ch. 249 provides for the drawing of twelve persons to serve as a jury in the assessment of damages; from these the judge is to draw six by lot, and the verdict of the majority of the said jury is to fix the amount of damages.
These instances are certainly sufficient to establish the position that at the time of the convention there was a known legislative usage in respect to this subject, according to which the term "jury" did not necessarily import a tribunal consisting of twelve men acting only upon a unanimous determination, but on the contrary was used to describe a body of jurors of different numbers and deciding by majorities or otherwise as the legislature in each instance directed. The convention ought therefore to be deemed to have used *Page 200 
this term in the sense in which it was then known to the law, and to have selected, out of the modes of proceeding theretofore in use in taking private property, those two modes which they thought best calculated to secure both public and private rights — appraisement by commissioners or by juries, — giving to this latter term not the restricted meaning which belongs to it when used in reference to trials civil or criminal, but the broader sense which it had acquired by legislative use. Had they intended to confine it to the narrower meaning, familiar as they were with the previous practice upon the subject, I think they would have found clear terms to express that intention. Upon this question therefore I am of opinion with the defendants.
Another objection made to the plea is, that it does not show that notice of the drawing of the jury was given not less than ten days prior to the time of its being drawn, nor that such a notice was ordered by the judge to be given.
The averment of the plea is of reasonable notice, while the statute directs the judge to order reasonable notice of not less than ten days to be given. The plea further shows that upon the day fixed for the drawing of the jury, the plaintiff appeared and objected to the regularity of the proceedings, but the ground of the objection is not stated. The judge, notwithstanding the objection, proceeded to draw the jury and fix a day for their meeting. Of this meeting proper notice to the plaintiff is averred. On the day fixed he appeared, and upon his objection one of the jurors was set aside as incompetent. The jury then proceeded to make their appraisement, but the plea does not show that the plaintiff appeared before the jury.
If the plaintiff had entirely disregarded the notice which he received, it is quite clear that he would not have been bound by the proceeding. The authority given by the statute to the judge to whom the petition was presented, was merely to order reasonable notice of not less than ten days to be given of the drawing of the jury. This authority *Page 201 
is not shown to have been pursued. The notice was in the nature of the first process in the case. It was the only means which the law had provided to warn the party that a proceeding for a compulsory sale of his property was pending. (Schneider v.McFarland, 2 Comst., 462.)
The question, then, is, whether the plea discloses anything which we can say amounts to a waiver of the plaintiff's right to the statutory notice. We are not to assume in favor of the defendants anything which they have not averred, for the law does not presume that a party's pleadings are less strong than the facts of the case will warrant. The plea shows that the plaintiff appeared and objected to the regularity of the proceedings. Upon this demurrer we must take it that the invalidity of the order was the very ground of the objection, for if the plaintiff had put himself upon some other ground it would have been so averred. So far the plaintiff had done nothing to waive the defect in the first process. Upon the plea there is no room to say that proper notice was proved to the judge to have been given, because the averment of proof of notice contained in the plea is only of due proof of the notice before mentioned, which, upon the face of the averment, was insufficient notice; and moreover, the objection lies back of the defect in the actual notice, in the defect of the order of the judge. Nor does the plea disclose any adjudication by the judge, that the order or the notice was sufficient, which might bring the case within the decision inSheldon v. Wright (1 Seld., 497). It must stand, therefore, upon its sufficiency under the statute, unless the appearance of the plaintiff and his objection to the competency of a juror is a waiver. In Dyckman v. The Mayor, c. (1 Seld., 434), and inThe Mohawk R.R. Co. v. Artcher (6 Paige, 84), an appearance and litigation upon the merits was held to be a waiver of a defect otherwise available. I think nothing short of an actual litigation upon the merits should be regarded as sufficient to conclude the party as an implied waiver of *Page 202 
such a defect, for nothing less than this makes out an intention to submit to the jurisdiction after an objection made to the court's going on upon the ground that the steps taken to get jurisdiction of the person were not warranted by law. Upon this ground I am of opinion that the plaintiff is right in his demurrer.
The judgment should be reversed, and judgment rendered for the plaintiff upon the demurrer, with leave to the defendants to amend upon the usual terms.
EDWARDS, PARKER, ALLEN and SELDEN, Js., concurred in the foregoing opinion. RUGGLES, J., was of opinion that the plea was sufficient and was in favor of affirmance. GARDINER, C.J., and DENIO, J., not having heard the argument, took no part in the decision.
Judgment reversed.