52b 377
37ap274

### BURR *vs.* STENTON and others.

By a sale of mortgaged premises under a judgment of foreclosure, the estates of the owner of the equity of redemption and of his lessee for years are absolutely barred and extinguished. The lessor's title being cut off by the foreclosure, the lease executed by him becomes void; and the estate of the lessee does not survive the contract by which it was created. If there is a surplus arising from the sale, the tenant is not entitled to any part of it.

APPEAL by the defendant Stenton from an order made at a special term, allowing the exceptions of the defendant Boughton to the report of a referee in a foreclosure suit, and declaring that Boughton was entitled to the first lien on the surplus moneys arising from the sale of the mortgaged premises, to the amount of his claim, ($975,) and modifying the report accordingly.

On April 27, 1863, Robert S. Stenton, defendant, not then being the owner of the premises 45 Wilson steet, Brooklyn, executed to James Boughton, defendant, a lease of said premises for the term of five years commencing May 1, 1863, at the yearly rent of $350, under which lease the defendant Boughton entered into possession of said premises, and so continued uninteruptedly up to November 1, 1866, paying his rent meantime to the defendant Stenton, his lessor.

The plaintiff held from 1856 to 1866 a mortgage on the premises to secure $1800.

On June 26, 1863, R. S. Stenton, defendant, became the owner in fee of the premises, subject to the mortgage and lease, and was the owner of the equity of redemption at the date of foreclosure of the mortgage by this action.

In June, 1866, this action was commenced to foreclose the plaintiff's mortgage in which Stenton, Boughton and others were made parties defendants as subsequent incumbrancers, and having liens acquired subsequent to the plaintiff' s mortgage.

The decree of foreclosure was entered October, 1866, by the terms of which Boughton, defendant, was barred

and foreclosed, of and from all right and title and interest, in and to the premises or claim therein or thereto.

Upon the sale of the premises, November 1, 1866, under the decree of foreclosure, a surplus was created after payment of the plaintiff's claim.

The referee appointed to ascertain and report the respective claims and priorities on the surplus proceeds, filed his report November, 1866, in which, after finding as matters of fact the execution and delivery by Stenton to Boughton of the lease; Boughton's occupancy of the premises thereunder, from May 1, 1863, to November 1, 1866; Boughton's foreclosure by the terms of the decree of all right, title and interest in and to the premises; and the value of the unexpired term of Boughton's estate in the premises of which he was foreclosed by the decree in this action to be $975, reported as conclusions of law thereon, that Stenton, the owner of the equity of redemption, was entitled to the entire surplus proceeds; to which conclusion of law the defendant Boughton duly excepted.

Upon application at special term, (December, 1867,) based upon the evidence taken by the referee, the report of the referee and the exceptions of the defendant Boughton, Justice Lott ordered that the exceptions of the defendant Boughton be allowed; that the report of the referee in other respects be confirmed; and directed payment to the defendant Boughton of the sum of $975 out of the surplus proceeds; from which order the present appeal is taken.

*A. C. Bradley,* for the appellant, Boughton. I. By the terms of the lease, Boughton assumed all the risks of the title, and of all disturbance and molestation of his possession, except by Stenton himself. He took that risk at that rent. *Caveat emptor.* 1. Stenton's limitation of the covenant to his own acts excluded all implied covenants. (*Vanderkarr* v. *Vanderkarr,* 11 *John.* 122. *Frost* v. *Ray-*

*mond,* 2 *Caines,* 188–192, *and cases cited.* 4 *Cruise's Digest,* 395, §§ 15, 16.) The mortgage under which the sale was made, was prior to the title both of Boughton and Stenton. The sale was not made by his procurement. Even if the purchaser had proceeded to eviction there would have been no breach of Stenton's contract. 2. But the covenant of quiet enjoyment goes only to possession, and not to title, and there must be actual expulsion or disturbance in the occupancy. (*Waldron* v. *McCarty,* 3 *John.* 471. *Kortz* v. *Carpenter,* 5 *id.* 120. *Van Slyck* v. *Kimball,* 8 *id.* 198. *Kerr* v. *Shaw,* 13 *id.* 236. *Webb* v. *Alexander,* 7 *Wend.* 281.) The only exception is where the premises are wholly vacant. (*St. John* v. *Palmer,* 5 *Hill,* 599.) 3. Boughton had no right to resort to the covenant, *in any event,* except on payment of rent, and on the omission to pay any part of that "*the hiring and the relation of landlord and tenant were to cease.*" (*See Lease.*) Two months' rent were in arrears on the day of sale. Rent was paid only to September 1, 1866. (2 *Chitty's Plead.* 559.) Stenton had full right to enter; *a fortiori* he had full right to do nothing. 4. Even if there had been eviction by paramount title, and if Stenton's limited covenant had been general, Boughton could have recovered only nominal damages, he not having been subjected to costs. *The rent reserved is the agreed equivalent for enjoyment lost.* (*Kelly* v. *Dutch Church,* 2 *Hill,* 105, 115, 116.) The difference between the rent reserved and the real value is the measure of damages, against the landlord, only in case the lessor himself willfully or tortiously occasioned the eviction. (*Chatterton* v. *Fox,* 5 *Duer,* 64. *Mack* v. *Patchin,* 29 *How. Pr.* 20.) 5. The referee had no jurisdiction to try a question of breach of covenant. The claim as presented, and attempted to be proved, was wholly for damages. These, never, until merged in judgment, are a lien, except on property taken *damage feasant* or on *ships,* for *collision.* The enjoyment of the premises for eighteen months en-

suing the sale Boughton has never acquired. He claims $975 *as amends.* That is, as damages, although he is not damnified, for he remains in possession,· having neither· attorned nor been subjected to higher rent, and nothing has happened but an event which he took the risk of— damages without damnification. Confessedly, Boughton had neither the same cause of action as was established in *Chatterton* v. *Fox,* and *Mack* v. *Patchin,* (*supra,*) nor the same judgment as the plaintiffs in those cases obtained. Yet he claims the exact lien he would have had if he had docketed judgment before the sale. And this under an order to determine the priority of liens.

II. *In rem.* Boughton had no· interest or lien on the surplus. 1. Stenton's title was subject to the plaintiff's mortgage. So was Boughton's. Each had the *option* to redeem on his own account; neither was under obligation to redeem for the other. The estates of both in the land ceased at the sale. 2. All estates and interests in premises sold by act of .law are, *unless extinguished* by the sale, transferred to the surplus; and those bear to each other the same relation they bore to the land, except that possessory estates are compensated by interest instead of possession, whether the estates be for years, for life, or lives. (*a.*) Possessory estates for a time certain are canceled by the payment of interest discounted at six per cent. (*b.*) Possessory estates for life or lives, are mere estates for years, the number of which is beforehand unknown, and the fund must be invested to await the development, unless the owner will consent that the term be turned into years on the principle of annuities. (*Dower,* 1 *R. S.* 741, §§ 5, 6; 2 *id.* 106, §§ 36, 45. *Partition,* 2 *id.* 325, §§ 52, 55, 56.) Section 54 is declaratory, (*see reviser's notes,*) and the statute provides for but a small number of actual cases. (*Jackson* v. *Edwards,* 7 *Paige,* 386, 419. *Foreclosure,* 2 *R. S.* 192, § 159. ` Rule* 84 *and annuity table. See also* 15 *N. Y. Rep.* 625; 17 *id.* 210; 5 *Abb.* 92, 100,

102; 16 *Barb.* 531; 22 *Wend.* 498.) 3. The sale is con-clusive as to the value of the property sold. It is made by authority of law for the very purpose of ascertaining by actual sale the value, and of excluding all opinions. Tenant for years can no more than tenants by curtesy or in dower, say the fund is inadequate to compensate him by interest for the property, which but for the sale he would have enjoyed. 4. Tenants by curtesy and in dower are not subjected to rent, and therefore they receive the interest without abatement. So of some other tenants for life, and some tenants for years. 5. But whenever rent is reserved, there, inasmuch as "rent is a return reserved out of the land," (*see definitions in Kent, Blackstone and Coke,*) it is equally reserved out of the surplus. And as the tenant was entitled to possession of the land only, sub-ject to rent, so he is entitled to interest on the surplus only, subject to rent. 6. Rent is an incorporeal heredita-ment issuing out of lands or tenements real, and is, of course, divisable into the same estates as may be carved out of the realty from which it proceeds. (*a.*) Wherever there is an estate in the realty created, paying rent, there is inevitably, *ex vi termini,* reserved in like manner and by the same contract an estate in the rent of the same duration. *That rent must be paid, or the estate in the realty fails.* (*b.*) So when, after the realty is sold, these are transferred to the personalty, the interest corresponding to the rent must be first paid, and only the balance goes to the tenant. In this respect estates for years and for life are alike. 7. It follows that whenever the fund is not large enough to leave any thing, after the interest anal-ogous to the rent is paid, especially when the fund is large enough to pay only a part of such interest, there is nothing for the tenant. And whether the estate were for life or for years it is extinguished at the sale, just as tenancies at will or sufferance are extinguished. 8. In the present case the surplus is only $4659, but the rent is $350 per

annum, payable monthly, and, discounted for eighteen months, would be $490.73; yet the whole interest, discounted at the same rate and time, would be only $392.14, leaving a deficiency, even on the rent alone, of $98.59. But he has been allowed a positive sum of $975, not by way of interest after payment of rent, nor even of interest without rent, for a tenant by the curtesy with an expectation of eighteen months would have been entitled only to $392.80, less by almost $600 than this tenant charged with $350 per annum, was allowed. He has been allowed a sum equal to eighteen months' interest, without rent, on a surplus equal to $12,077. In fact it would have required a surplus of $18,330, to have paid the rent and yielded $975, interest for eighteen months, discounted to the day of sale. Such is really the value which the witnesses, hoarding their money but lavish of opinions, unconsciously place on this property, which, nevertheless, brought only $4657, under all the tests of actual value which the law has been able to devise. 9. If these views be correct, that is if tenants are entitled only to interest of the fund resulting from the sale, and if tenants charged with rent are entitled to receive interest only after the interest analogous to rent shall have been paid, it follows that Boughton had no lien whatever on the fund in question, and that the value of 45 Wilson street for the next eighteen months was as irrelevant as for the next thousand years. 10. The learned referee received the evidence against Stenton's objection, and came to the conclusion that it had no relevancy, but reported it because it was taken—to the end, probably, that if the court should conclude that there was an implied covenant for quiet enjoyment, and that such covenant was broken, Stenton was liable for exemplary damages, therefor, as upon a willful or tortious eviction; that such damages though unliquidated by a judgment were a lien on real estate, and so upon the fund, and that he had jurisdiction under the order to settle that question,

and had settled it wrongly, then that the court might have the damages assessed at their hands, and all parties be saved the trouble and expense of a rehearing. 11. Rule 32 does not make it incumbent on the prevailing party to except. The penalty of omission is that the report shall be in all things confirmed. 12. The question before the referee, whether on the lease and the amount of the surplus—Stenton being the acknowledged owner of the equity of redemption—Boughton had any interest or lien in the surplus, he has answered in the negative. If that answer were right, the party in whose favor it was made is not to be precluded from the benefit of it, because the referee has been persuaded to find other matters irrelevant to that issue. 13. The case of *Kelly* v. *The Dutch Church,* (2 *Hill,* 105, 115, 116,) already cited, shows that the rent reserved is by agreement the averaged value of the premises from beginning to end of the term, and that if the premises be not enjoyed, the rent saved is an agreed equivalent for such loss. It is no hardship, then, that the tenant not paying any longer his rent, should not be allowed to divide the principal of the fund when it is too small to yield him any interest. 14. Is it to be a rule in all cases that wherever a tenant, without covenants, can find witnesses to testify that the rentable value of the premises exceeded the rent reserved, such excess is to be deducted from the surplus and paid to the tenant. If there be no surplus, has such tenant a right of action for money paid to the lessor's use in preventing or diminishing a deficiency. That would be new. On the contrary, if the rentable value should fall below the rent reserved, has the landlord any corresponding remedy against the tenant? 15. In all such cases, the rentable value at the time of foreclosure will be above, below, or equal to the rent reserved. Rents fluctuate, as well as currency; one may cause the other. After the parties have contracted in reference to such fluctuations—adjusting rents to risks—it is too late,

after having had the advantage of the inadequate rents, to call upon the courts to give indemnity for the risks. The indemnity was in the smallness of every month's rent.

*Geo. G. Reynolds,* for the respondent. ·I. The defendant Boughton, lessee, claims as against Stenton, defendant, (his grantor and the owner of the equity of redemption,) the sum of $975, portion of the surplus proceeds, (being the amount found by the referee as the value of the unexpired term of Boughton's lease at the date of the sale,) as the value of the estate he had in the premises, at the date of the sale. A lease for years, accompanied with possession, and the right to possess for such term, *creates a lien* on the premises with which they are charged, during such term, and conveys to the lessee an estate in the premises; and the lien in favor of the lessee upon his taking possession of the premises under the lease is *perfected* and matured as against his grantor, (the owner of the equity,) and against all subsequent incumbrancers, and is subject only to the liens already created and matured. 1. Estates for years are *expressly recognized* by our statutes as *chattels real.* (3 *R. S.* 10.) A chattel real is an interest in, and annexed to, the realty, *e. g.* an estate for years, (*Kent's Com.*) This question was thoroughly canvassed in the Court of Appeals in the case of *Averill* v. *Taylor,* (8 *N. Y. Rep.* 44,) where the court held that estates for years, though still *chattels real,* are not now deemed *mere terms,* but give *the lessee an estate and interest* in the premises, whereby he has the right to redeem from prior liens, &c. Though formerly supposed to have an estate in the *term of years* merely, he is now held to have an estate in the premises. This position appears more clearly by illustration. Suppose the date of the lease and of occupation under it to be prior to the mortgage foreclosed, the sale and conveyance under the mortgage does not confer an absolute estate in the premises to the purchaser, which

would be the case if the lease be regarded merely as a contract for possession between the lessor and lessee, and conveying to the lessee no estate in the premises.

II. The owner of the estate conveyed by lease, having been made a party defendant in the action of foreclosure, and by the terms of the decree, foreclosed of his interest and estate in the premises, can in equity claim out of the surplus moneys, as against his grantor and subsequent incumbrancers, such portion of the same as can be shown to have been produced by the sale of his estate, *i. e. the amount of the surplus* into which his estate in the premises has been converted. The surplus proceeds arising on a sale of land under mortgage foreclosure, stand in the place of the land, in respect of those having liens or vested rights therein. (*Matthews* v. *Duryee,* 45 *Barb.* 69.) The lessee being divested of his estate in the premises by the action of the court, is entitled to protection and preservation by the court. " Liens which are cut off by a sale, must be protected by the court which orders the sale. The equities of all parties are before the court, and as much the objects of its care, as those of the owner of the mortgage primarily to be foreclosed." (*Livingston* v. *Mildrum,* 19 *N. Y. Rep.* 440, 442.) The lessee is a necessary party to the foreclosure suit, in order to. discharge the estate in the hands of the purchaser from his lien, and from his right to redeem. He becomes such necessary party, because *he has a valid subsisting legal interest* in the subject matter of the suit, which the court is bound to protect. The lessee having an interest in the premises, including the right to redeem from the lien of the mortgage, (*Averill* v. *Taylor,* 8 *N. Y. Rep.* 44,) the court will not compel the lessee either to pay off the mortgage, or lose his lien on the surplus. The only real protection, therefore, that the court can give in this instance to the defendant Boughton, is to give him *the same rights in the surplus*

*proceeds,* after the satisfaction of the mortgage, as he had in the mortgaged premises. The estate in the lessee's hands was his right to occupy the premises on payment of the rent reserved, for a certain period; and *this estate* is found by the referee *as matter of fact, and unexcepted to,* to be his, deducting the amount of rent *reserved,* equivalent to the sum of $975 of the surplus proceeds. If the whole surplus in this case is to be handed over to the owner of the equity of redemption, the grantor and lessor of Boughton, then it is established that an owner and lessor, even with ample means at his disposal may suffer a foreclosure and sale, (where the premises are of greater value than the mortgage debt,) *for the express purpose* of freeing the estate from the just claim of the lessee. To say that the lessee is a necessary party to the foreclosure, to perfect the title and at the same time to deny him any lien on the surplus after the mortgage debt is satisfied, is to repudiate the principles established by the courts to determine who are necessary parties. This case is *solely* between the lessee and the owner of the equity who gave him the lease, (the right of no judgment or mortgage holder intervening.) All the equity is in favor of Boughton, lessee, and to deny his claim in this proceeding, would be to turn him over to the uncertainty and circuity of some other remedy, when the parties are already before the court, and the fund on which he has an equitable lien is already under its control.

III. The theory of distribution of surplus proceeds is fairly indicated in the case of *DeRuyter* v. *Trustees of St. Peter's Church,* (2 *Barb. Ch.* 555,) where it is held that a person in possession, claiming to have an equitable interest prior to the mortgage, *not a party to the suit,* is not cut off by the sale. That the premises are presumed to have been bid upon with reference to such claim of the tenant and the amount of the proceeds diminished *pro tanto,* and therefore he will have no claim upon the surplus moneys. The chancellor says: "For this reason he has no claim

upon these surplus moneys, which *have not been produced* by the sale of the equitable interest in the premises." (*Id.* 558.) Although Boughton's· claim is here subsequent to the mortgage, the same reasoning applies. As he was made a party to the suit, and the surplus was produced by the sale of his interest, *he has a claim on the surplus. DeRuyter* v. *St. Peter's Charch,* 2 *Barb. Ch.* 555.)

IV. If it should be said that although Boughton has an equitable lien on the surplus, *it is unliquidated,* and cannot therefore be allowed, a recurrence to the case of *Livingston* v. *Mildrum,* (19 *N. Y. Rep.* 440,) *will show* the objection *to be groundless.* The court has ample power to enforce all the equities. But why should not the referee determine the validity and amount of the claim and thus liquidate it? The court has full right to try questions of fact arising in equity proceedings; and unliquidated claims may be settled by reference in surplus proceedings. One case which clearly proves this, is that of payments alleged to have been upon a judgment or mortgage which comes in to claim the surplus. The payments may have been made in labor or goods, and the referee may have to settle the amount of such payments, upon a *"quantum meruit."* Will any one deny his right to do so? Numerous other cases might be supposed. Why then should he not determine the *value of a lease* which is as much a lien on the premises as a mortgage? The referee seems to have found *no difficulty* in doing so in this case, to the satisfaction of all parties, it is to be presumed.

V. The defendant Stenton, although *not* at its date the owner in fee of the premises, having made the lease without disclosing to the defendant Boughton that he was not such owner, is *estopped* from setting up his want of title, as against his grantee and lessee, to render the lease void. He is further estopped from setting up the *invalidity of the lease after having received* the rents therein and thereby *reserved* for nearly three years after he, Stenton, actually

became such owner of the fee. Where a party having no title conveys to another, and *afterwards obtains* title to himself, such title will enure to the benefit of the grantee, and it will be inferred that his subsequent purchase was intended to confirm his deed. (*Bacon's Abridg. title Leases. Jackson* v. *Stevens,* 13 *John.* 316. *Jackson* v. *Bull,* 1 *John. Cases,* 81. *Jackson* v. *Murray,* 12 *John.* 201.) The tenant cannot dispute his landlord's title. Neither can the landlord his tenant's. Estoppels must be mutual. (*Sparrow* v. *Kingman,* 1 *Comst.* 242, 248, *&c.*)

VI. The defendant Stenton claiming the surplus proceeds under the decree of foreclosure in this action, is estopped from denying that Boughton is divested of his lien and estate in the premises, when by the terms of the decree both parties are "*barred and foreclosed,*" of and from all right, title and interest or claim therein or thereto. All parties to the action are bound by the decree. The decree of foreclosure and sale is the basis of the claims of both parties to the surplus proceeds. It would be absurd for Stenton to claim under it when he is benefited by it, and object to its sufficiency when he is prejudiced.

VII. *No formal eviction is necessary* to *perfect* Boughton's claim to the surplus proceeds. (*Hunt* v. *Amidon,* 4 *Hill,* 345.)

VIII. To decree the entire surplus proceeds in this action to the owner of the equity of redemption, the defendant Stenton, as against the defendant Boughton, his lessee, is practically to allow a party to take advantage of and be benefited by his own negligence and wrong. Stenton, the lessor, was bound to protect his lessee from the prior liens on the property, viz: the mortgage, by payment of interest on the bond as it matured. By neglecting to do so, in accordance with the conditions of his bond and mortgage, he suffered and procured the foreclosure of the mortgage, and the divestment of Boughton's, (his lessee,) lien and estate in the premises to his, Stenton's,

profit. If now he be allowed, out of the surplus proceeds the sum of $975, the amount found by the referee to be the value of Boughton's estate in the premises, he will be permitted to take advantage of his own wrong and negligence.

*By the Court,* GILBERT, J. By the sale under the judgment of foreclosure, the estates of Stenton, the lessor, and of Boughton, the tenant, in the land, were absolutely barred and extinguished. There being a surplus, the question is, whether the tenant is entitled to any part of it. I think he is not. He had, it is true, an estate in the land, but it was a chattel interest only. (1 *R. S.* 722, § 5. 2 *Bl. Com.* 386.) All his estate was a right to the temporary use and possession of the premises, for a stipulated renumeration by the payment of rent, and it rested solely in contract. Chancellor Kent defines a lease for years to be " a contract for the possession and profits of land for a determinate period, with the recompense of rent." (4 *Kent's Com.* 85. *Add. Cont.* 333.) When the lessor's title was cut off by the foreclosure, this contract or lease become void. The estate of the lessee did not survive the contract, by which it was created. The rule is correctly stated by Mr. *Taylor,* in his treatise, as follows: " Whenever the estate, which the lessor had at the time of making the lease, is defeated, or in any other manner determined, the lease is extinguished with it. (*Tay. L. and. T.* § 519.) The lessee cannot claim any rights under the lease, without paying rent, and the lessor cannot claim rent, because the lessee has not possession of the premises by virtue of the lease. The only interest of the lessee under it, became a chose in action for the breach, in which the measure of his damages would be merely nominal. (*Kelly* v. *Dutch Church,* 2 *Hill,* 105.) This point seems to be very clear.

But assuming that the estate, created by the lease, continued, so as to give the tenant an interest in the surplus,

such interest, would be only the income of the fund, subject to an abatement of the rent reserved in the lease, or the payment of the value of such income, over and above the rent in gross, to be ascertained upon the principle applicable to annuities.

There is no principle on which the tenant can be entitled to the speculative or mercantile value of his lease, or any other value than that which by computation shall appear to be the excess of the income of the fund, over and above the rent reserved.

Upon this principle, the claim of the tenant in this case had no value. He has, therefore, no right to any portion of the surplus. The value found by the referee, was evidently a speculative one, having no other foundation than the opinion of witnesses. His conclusion being correct, no exception to the finding on the question of value was necessary.

The order appealed from must be reversed, with costs, and an order must be entered, confirming the report of the referee, and directing the payment of the surplus in conformity therewith.

[DUTCHESS GENERAL TERM, May 14, 1868. *Lott, J. F. Barnard, Gilbert* and *Tappen,* Justices.]