THE UNION PACIFIC RAILWAY CO. *v.* THE BURLINGTON & MISSOURI RIVER RAILROAD CO. IN NEBRASKA AND THE OMAHA & SOUTHWESTERN RAILROAD CO.

*(Circuit Court, D. Nebraska. ——, 1880.)*

1. EMINENT DOMAIN—RIGHT OF WAY—STATE LEGISLATION.—The right of way of the Union Pacific Railway is not property of the federal government set apart for its own public use, so as to exempt it from the operation of a law of the state of Nebraska respecting the crossing and connecting of railroads, and the condemnation of property for those purposes.

2. SAME—FOREIGN RAILWAY CORPORATIONS.—Sections 97 and 113 of the General Statutes of the State of Nebraska, respecting the crossing and connecting of railroads and the condemnation of property for those purposes, are applicable to foreign as well as domestic railway corporations.

3. SAME—CONCURRENCE OF MAJORITY OF COMMISSIONERS.—The concurrence of a majority of commissioners in the condemnation of a right of way, in the exercise of the power of eminent domain, is a public matter, within the meaning of the rule that, when authority is vested in three or more persons to determine a public question or matter of public concern, a majority have power to decide, provided all act on the matter.

In Equity. Motion to dissolve injunction.

*A. J. Poppleton,* for complainant.

*J. M. Woolworth* and *T. M. Marquette,* for defendants.

McCRARY, C. J. This case is before me on a motion to dissolve the injunction heretofore allowed restraining respond-

ents from extending their railroad track across that of complainant. The case is as follows: The complainant is a corporation created by and organized under the act known as the Pacific Railroad Charter, approved July 1, 1862, and acts amendatory thereof.

The defendants are corporations organized under the laws of Nebraska. The complainant owns and operates the Union Pacific Railway, extending from the Missouri river westwardly across the state, and the defendants own and operate a line from Omaha to Lincoln. The respondents, desiring to extend their track across that of the complainant for the purpose of connecting with the Omaha & Northern Nebraska Railway Company, instituted proceedings under the law of Nebraska, in the proper state court, for the purpose of assessing the damages accruing to the complainant on account of the crossing of its track, and also for the further purpose of designating the point at which said crossing should be made and the manner of crossing. The statute under which these proceedings were instituted is as follows, (section 113, Gen. St. Neb. 195:)

"Every railroad company shall have power to cross, intersect, join, and unite its railroad with any other railroad before constructed, at any point on its route, and upon the grounds of such other railroad company, with the necessary turnouts, sidings, and switches, and other conveniences, in the furtherance of the objects of its connections. And every company whose railroad is, or shall hereafter be, intersected by any new railroad, shall unite with the owners of such new railroad in forming such intersections and connections, and grant the facilities aforesaid; and if the two corporations cannot agree upon the amount of compensation to be made therefor, or the points and manner of such crossings and connections, the same shall be ascertained and determined by commissioners, to be selected as provided in this subdivision."

The section referred to as regulating the proceedings is section 97, p. 191, and is as follows:

"If the owner of any real estate, over which said railroad

corporation may desire to locate their road, shall refuse to grant the right of way through his or her premises, the probate judge of the county in which said real estate may be situated, as provided in this subdivision, shall, upon the application of either party, direct the sheriff of said county to summon six disinterested freeholders of said county, to be selected by said probate judge, and not interested in a like question, unless a smaller number is agreed upon by the parties, whose duty it shall be to inspect said real estate and assess the damages which said owner will sustain by the appropriation of his land to the use of said railroad corporation, and make report in writing to the probate judge of said county, who, after certifying the same under his seal of office, shall transmit the same to the county clerk of said county for record, and the said county clerk shall file, record, and index the same in the same manner as is provided for the record of deeds in this state; and such record shall have the like force and effect as the record of deeds, in pursuance of the statute in such case made and provided. And if said corporation shall, at any time before they enter upon said real estate for the purpose of constructing said road, pay to said probate judge, for the use of said owner, the sum so assessed and returned to him as aforesaid, they shall thereby be authorized to construct and maintain their railroad over and across said premises; *provided,* that either party may have the right to appeal from such assessment of damages to the district court of the county in which such lands are situated, within sixty days after such assessment; and in case of such appeal the decision and finding of the district court shall be transmitted by the clerk thereof, duly certified, to the county clerk, to be filed and recorded, as hereinbefore provided, in his office; but such appeal shall not delay the prosecution of the work on said railroad, if such corporation shall first pay or deposit with said probate judge the amount so assessed by said freeholders; and in no case shall said corporation be liable for the costs of such appeal unless the owner of such real estate shall be adjudged entitled, upon the appeal, to a greater amount of damages than was awarded by said free-

holders. The company shall, in all cases, pay the costs of the first assessment; *provided,* that either party may appeal from the decision of the district court to the supreme court of the state, and the money so deposited shall remain in the hands of the probate judge until a final decision be had, subject to the order of the supreme court."

Commissioners were appointed as required by the statutes, and, after being qualified, they proceeded in the performance of their duties, and reported as follows:

"That said crossing shall be made in the east part of lot number seven, (7,) in block number one hundred and fifty-six, (156,) in the city of Omaha, as shown on the plat marked Exhibit A; that the manner of said crossing shall be at an angle of fifty-eight degrees and fifty-eight seconds, upon a grade even with that of the Union Pacific Railway's track at that point, and with steel templates four (4) inches in width, with two and a half (2½) inches width of head, or whatever is necessary to make a good and safe crossing at that point; that the compensation to be paid to the Union Pacific Railway Company for such crossing shall be one thousand dollars, ($1,000.) All of which is respectfully submitted.

[Signed]                              "Samuel E. Rogers.
                                      "Geo. Smith.
                                      "Michael Donovan.
                                      "Charles Turner."

If the statute is applicable to this case, and has been followed in the condemnation proceedings, the complainant is bound, and has no remedy except the right to contest the question of damages on appeal to the district court. Counsel for complainant insists that the proceedings in condemnation are void upon several grounds, which will now be considered.

1. It is claimed that, inasmuch as the complainant's franchise is derived from the United States, no state legislation is valid which provides for condemning the right of way for another railroad across its right of way and track.

It is now well settled that the right of eminent domain is a

right inherent in every government, and that it belongs alike to the states and to the United States. Each, within its own sphere of governmental action, may exercise it. *The United States* v. *Chicago*, 7 How. 185; *Kohl* v. *The United States*, 91 U. S. 367.

Should a case of conflict between the state and federal government arise, the paramount authority of the United States under the constitution would, of course, prevail. Thus, if the United States has, by proper proceedings, condemned and taken land for a fort, arsenal, navy yard or light-house, or for a post-office, custom-house or court-house, it would not be in the power of the state, in the exercise of its right of eminent domain, to take the same property. But the present case does not come within this principle. The United States has never condemned the right of way of the Union Pacific Railway, and taken it for its own use for public purposes, within the meaning of the rule just stated. It has only chartered that company, given it the right to construct and operate a railway, and granted to it the right of way over public lands along its line, together with the right to take private property for the same purpose upon making just compensation. The distinction between this and the condemnation of land under the right of eminent domain for national purposes, is too plain to require elaboration. I am clearly of the opinion that the right of way of the Union Pacific Railway is not property of the federal government set apart for its own public use, so as to exempt it from the operation of the law of the state of Nebraska, above quoted, respecting the crossing and connecting of railroads, and the condemnation of property for those purposes. It is the property of the corporation acquired under a law of the United States. If, however, it were conceded to be the land of the United States, unless held for governmental purposes, it would, even in that case, be subject to the state's power of eminent domain. Land owned by the United States, as a mere proprietor, and not used for any of the purposes of the national government, may be taken by the state for public use. *U. S.* v. *Railroad Bridge Co.* 6 McLean, 517.

It has been held by the supreme court of the United States that the Pacific Railroad is subject to state taxation. *The Railroad Company* v. *Peniston,* 18 Wall. 5. It was insisted in that case that the Pacific Railroad was created by congress for public and national purposes, and that, like a national bank, it was an instrument of the general government, and not subject to state jurisdiction for purposes of taxation. But this position was not sustained. It is difficult to see upon what principle property can be held to be so exclusively within the federal jurisdiction as to be beyond the reach of the state's power of eminent domain, and yet subject to state taxation.

2. It is suggested that the statute under consideration was intended to apply only to domestic railway corporations created under the laws of the state, and such foreign corporations as might by state legislation be authorized to extend their roads into the state. Upon this point it is only necessary to say that the statute in terms applies to "every railroad company," which must be held to mean every such company operating a railroad within the state. It is not to be presumed that it was intended to exempt the Union Pacific Railway from the operation of the act, since to do so would be to prohibit the crossing of its line by other roads, and thus to prevent the operation of an unbroken line of railway communication between northern and southern Nebraska.

3. It is insisted that the award of the commissioners is void because only four of the six commissioners concurred in and signed it, although they all took part in the proceedings and deliberations. The law upon this subject is that where authority is vested in three or more persons to determine a public question or matter of public concern, a majority have power to decide, provided all act on the matter. If the matter be one of private concern all must concur, unless provision is made for a decision by a less number. *Schenck* v. *Peay,* 1 Wool. 175, 187; *Young* v. *Buckingham,* 5 Ohio, (Hammond,) 485–490; *Ex parte Rogers,* 7 Cow. 526, and note *a*; *Cruger* v. *Railroad Co.* 12 N. Y. 190.

That the condemnation of a right of way in the exercise of the power of eminent domain is a public matter, within the

rule, is not only clear, under the authorities, but also upon principle, since the proceedings can be justified only upon the ground that the land should be taken for public use and for the public interest.

The motion to dissolve the injunction is sustained.