1. EMINENT DOMAIN—CHANGE OF GRADE—INJURY TO TENANT.
   The interest of a tenant of realty under a lease for years is not real estate, but a chattel, and he cannot recover damages suffered by a change in the grade of the approach to a bridge over a canal erected under Laws 1893, c. 560, § 4, providing that any person whose "real estate" is injured by the change of grade made in erecting the bridge may recover damages for the same from the city.

2. SAME—LIABILITY OF CITY.
   A city is not liable to an owner or tenant of realty abutting on a street for damages caused by change of grade, unless there is a statute imposing liability.

Appeal from award of commissioners.

John Ehrsam, Jr., filed a claim for damages against the city of Utica for injuries arising from the erection of a bridge over a canal. From the award of commissioners in favor of claimant, the city of Utica appeals. Reversed.

By chapter 341 of the Laws of 1891, it was provided that a new bridge should be constructed in Genesee street, in the city of Utica, over the Erie Canal, at the joint expense of the city and of the state. The act provided:

"Nor shall the work be commenced until the city of Utica shall, in writing, release the state from any liability that may arise or occur from the change in the grade of the approaches to said bridge."

This act was amended by chapter 560 of the Laws of 1893, by which it was provided:

"Sec. 4. Any person claiming that the real estate owned by them, or any part thereof, by any change that may be made in the grade of Genesee street by reason of cutting or lowering said grade, may, at any time within thirty days thereafter, file with the city clerk a statement of the amount of damages claimed by them. Upon the application of the corporation counsel of the city of Utica, and upon notice of not less than eight days to all persons filing such claims, the supreme court at any special term thereof held in the Fifth judicial district of the state of New York, shall, upon such notice, appoint three disinterested freeholders of the city of Utica, as commissioners to estimate and award damages, if any, which any owner of real estate may sustain by reason of change of grade aforesaid, and fix the time and place of their first meeting.

"Sec. 5. The commissioners shall view the property and may, at their discretion, receive any legal evidence affecting the same. They shall ascertain and award to each owner of real estate such damages as in their opinion will fairly compensate them for injury occasioned by the change of such grade, after deducting the benefits, if any, received by them.

"Sec. 6. The report of the commissioners, or a majority of them, shall be final and shall be filed with the said city clerk within ten days thereafter. Unless an appeal shall be taken to the supreme court within thirty days from the filing of said report, the aggregate amount of such awards, if any, shall be a charge on the city of Utica, and shall be included in the next annual tax levy of said city, and the money raised thereby shall be paid to the said claimants, according to the awards made in their cases, respectively."

The old bridge, which was superseded by the new one, constructed pursuant to said acts, was a fixed structure, elevated high enough above the canal to admit of the passage of boats, and approaches were constructed on the north and south sides thereof, which raised the grade of Genesee street on both sides of the old bridge above the natural level of the street. This old bridge had been in existence, or one like it, since the Erie Canal was constructed. The Devereux Block is on the south side of the Erie Canal, and on the west side of Genesee street, and opposite to the south approach to said old bridge. The Devereux Block is occupied by many tenants for stores and offices. The new bridge authorized by said acts was begun November 15, 1893, and completed May 2, 1894. The claimant, during the period of construction, was a lessee of a store, at an annual rental of $800, in the Devereux Block, known as "No. 138 Genesee Street," under a lease dated March 5, 1891, for one year, with the privilege of renting it for three years, which was extended until the 1st day of May, 1895, at which time it was further extended. January 8, 1895, the claimant filed a claim against the city, in which he asserted that the rental value of his store was greatly diminished by the blocking of the street and sidewalk during the construction of the new bridge, interrupting travel in front of his store, and greatly diminished his business as a dealer in hats, caps, and gentlemen's furnishing goods, for which purpose the store was occupied. The commissioners sustained in part his contention, and awarded $400 damages, in a report separately stating the facts found and the conclusions of law. The city filed exceptions to the award, and has appealed therefrom.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, McLENNAN, and SPRING, JJ.

James Coupe, for appellant.
Thomas S. Jones, for respondent.

FOLLETT, J. Words and terms having a precise and well-settled meaning in the jurisprudence of a country are to be understood in the same sense when used in its statutes, unless a different meaning is unmistakably intended. Perkins v. Smith, 116 N. Y. 441, 23 N. E. 21; Stephenson v. Higginson, 3 H. L. Cas. 638; McCool v. Smith, 1

Black, 459; Clarke v. City of Utica, 18 Barb. 451; Cruger v. Railroad Co., 12 N. Y. 190, 198; Wynehamer v. People, 13 N. Y. 378, 427; End. Interp. St. 553; 23 Am. & Eng. Enc. Law, 324. The term "real estate" has a precise and well-settled meaning in the jurisprudence of this state, and the interest of a tenant of realty under a lease for years is not real estate, but is a chattel real, and is not liable to sale on an execution. 1 Rev. St. p. 722, § 5; 2 Rev. St. (Banks' 9th Ed.) p. 1789; Laws 1896, c. 547; Lewis v. Thompson, 3 App. Div. 329, 38 N. Y. Supp. 316; State Trust Co. v. Casino Co., 5 App. Div. 381, 387, 39 N. Y. Supp. 258; Despard v. Churchill, 53 N. Y. 192; Smith v. Ferris, 6 Hun, 553; Burr v. Stenton, 52 Barb. 377, affirmed 43 N. Y. 462; Mayor, etc., v. Mabie, 13 N. Y. 151, 158. The interest of a lessee under such a lease does not descend, in case of his death, to his heirs, but goes to his personal representative. "The terms 'real estate' and 'lands,' as used in this chapter, shall be construed as co-extensive in meaning with lands, tenements and hereditaments." 1 Rev. St. p. 750, § 10; 2 Rev. St. (Banks' 9th Ed.) p. 1822, § 10; Laws 1896, c. 547, § 1; 5 Rev. St. (Banks' 9th Ed.) p. 3544, § 1. "The term 'real property' includes real estate, lands, tenements and hereditaments, corporeal and incorporeal." Laws 1892, c. 677; 1 Rev. St. (Banks' 9th Ed.) p. 110, § 3 ("Statutory Construction Law"). "This chapter * * * is applicable to every statute unless its general object, or the context of the language construed, or other provisions of law, indicate that a different meaning or application was intended from that required to be given by this chapter." Laws 1892, c. 677, § 1; 1 Rev. St. (Banks' 9th Ed.) p. 110, § 1. The statutory construction law was in force when chapter 560 of the Laws of 1893, under which the claim was made, was enacted. Leases for years are not real estate. Westervelt v. People, 20 Wend. 416, affirming Id., 17 Wend. 674. Such was the rule at common law. 2 Bl. Comm. 16. For definitions of the term "real property," as used in the statutes of this state, see 1 Rev. St. (Banks' 9th Ed.) p. 111, note to section 4. There is no language in chapter 560 of the Laws of 1893 broad enough to bring a lessee for years within the term "owner of real estate," as used in that chapter. Persons having chattel interests in real estate affected by a change of grade of Genesee street are not within the terms of the act, and it seems to me that it was the clear intention of the legislature simply to authorize the owners of abutting real estate damaged by the change of grade to recover their damages of the city. Such real estate would necessarily be permanently affected by the change of grade, and the owner put to expense to adjust the property to the new grade of the street, and it was not intended to give a claim for damages to tenants occupying rooms or stores, for short periods, in the real estate affected. It is well settled, by a long line of cases, that a municipality of this state is not liable to an owner or tenant of realty abutting on a street for damages caused by changing the grade of the street, unless there is a statute imposing a liability. Radcliff's Ex'rs v. City of Brooklyn, 4 N. Y. 195; Conklin v. Railway Co., 102 N. Y. 107, 6 N. E. 663; In re Grade-Crossing Com'rs, 154 N. Y. 550, 49 N. E. 127; 6 Am. & Eng. Enc. Law (1st Ed.) 548, and cases cited. No matter how great the damages

sustained by the claimant may be, he is without remedy, unless he brings his case within the terms of the statute, which I think he is unable to do. In re Grade-Crossing Com'rs, 154 N. Y. 550, 49 N. E. 127, does not sustain the contention of the claimant. The statute under which damages were awarded in that case is much broader than the statute under consideration. The statute provides that the "owners or persons interested" in property which should be injured by the change of grade might recover their damages, but no such language, or any language equivalent to it, is found in the acts relating to the Genesee street bridge. Having reached this conclusion, it is unnecessary to consider whether the claimant filed his claim within 30 days,—the time limited by the fourth section of the act. The statute does not provide that costs may be awarded for the proceedings before the commissioners, or on an appeal therefrom; and though this is a special proceeding, in which the court may grant or withhold costs, I think that, under the circumstances, the claimant having suffered damages which he cannot recover, and the statute not having been construed, the award should be reversed, and the claim dismissed, without costs to either party. All concur.